Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| PAUL SAPAN,<br><br>      Plaintiff,<br>  vs.<br><br>STUDENT LOAN CONSOLIDATION CENTER, LLC, a Florida Limited Liability Company, MONETARY MANAGEMENT SYSTEMS, INC., a Florida Corporation, THOMAS BREAZEALE, and individual, and individual.<br><br>      Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br>**Trespass to Chattel**<br>**Unfair Business Practices** |

COMES NOW Plaintiff PAUL SAPAN (hereinafter referred to as "Plaintiff") who alleges as follows:

///

- 1 -
Complaint

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff is, and at all times herein mentioned was, a resident of Los Angeles, but has recently moved to the County of Orange State of California.

2. Defendant STUDENT LOAN CONSOLIDATION CENTER, LLC ("SLCC") is, and at all times herein mentioned was, a Florida Limited Liability Company, doing business in the County of Los Angeles, State of California.

3. Defendant MONETARY MANAGEMENT SYSTEMS, INC. ("M.M.S.") is, and at all times herein mentioned was, a Florida Corporation, doing business in the County of Los Angeles, State of California.

4. Defendant THOMAS BREAZEALE is, and at all times herein mentioned was, an individual, doing business in the County of Los Angeles, State of California.

5. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

/ / /

6. At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

## FACTUAL SUMMARY

7. Defendants made thirteen (13) live calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch student loan modification services on the following dates and times and using the following Caller ID ("CID") numbers:

- July18, 2013 at 9:19am, CID 750-948-8768
- July18, 2013 at 9:26am, CID 949-930-0598
- July18, 2013 at 9:27 am, CID 324-903-6727
- July18, 2013 at 9:28am, CID 324-903-6727
- July18, 2013 at 9:28am, CID 324-903-6727
- July18, 2013 at 3:31pm, CID 949-930-0598
- July18, 2013 at 3:45pm, CID 949-930-0598
- July18, 2013 at 4:02pm, CID 949-930-0598
- July18, 2013 at 5:47pm, CID 949-930-0598
- July19, 2013 at 9:47am, CID 949-930-0598
- December 16, 2013 at 10:26 am, CID 585-636-0010
- December 16, 2013 at 10:28 am, CID 3038
- December 16, 2013 at 4:45 pm, CID 954-377- 9309

8. Mr. Sapan's home phone has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission from December 23, 2007 to the present.

/ / /

9. While each of the calls complained of above used the Caller ID number, they did not transmit Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

10. On July18, 2013 at 9:19am, Defendants called Mr. Sapan from CID number 750-948-8768.

11. During the call, "John" from "Student Loan Center" attempted to pitch Mr. Sapan student loan consolidation services.

12. At some point during the call, "John" transferred the phone line to "Omar" of "Student Loan Consolidation Center".

13. Mr.Sapan asked about the company's web address and "Omar" stated it was"www.studentloancc.com".

14. Defendant M.M.S. owned the website www.studentloancc.com at all times relevant to this Complaint.

15. Mr. Sapan never gave anyone permission to call him again during this first call.

16. Almost immediately thereafter, Defendants called Mr. Sapan On December 18, 2013 at 9:26 am, 9:27 am and 9:28 am from CID numbers 949-930-0598 and 324-903-6727.

17. Mr. Sapan did not answer any of the three aforementioned phone calls.

18. On July 18, 2013 at 9:28 am Defendants once again called Mr. Sapan from CID 324-903-6727.

19. Increasingly frustrated by the badgering by Defendants illegal phone calls, Mr. Sapan answered a call from "John" of Student Loan Consolidation Center and asked him to stop calling.

20. Later in the day, On July 18, 2013 at 3:31 pm Defendants called Mr. Sapan's home number again, this time using CID 949-930-0598.

21. During the call, "Ryan" from "Student Loan Center" attempted to pitch Mr. Sapan the same student loan consolidation services.

22. Increasingly frustrated by the phone calls, Mr. Sapan hung up the phone.

23. On July 18, 2013 at 3:45pm Defendants called Mr. Sapan's home number from CID 949-930-0598.

24. Mr. Sapan did not answer, but "Ryan" of "Student Loan Center" left a voice message on Mr. Sapan's telephone attempting to pitch student loan consolidation services to him.

25. On July 18, 2013 at 4:02 pm, 5:47 pm, and 9:47 am Defendants called Mr. Sapan's home telephone from CID number 949-930-0598.

26. Mr. Sapan did not answer any of the three (3) aforementioned telephone calls made by Defendants.

Complaint

27. On December 16, 2013 at 10:26 am Defendants called Mr. Sapans home telephone number using a falsified CID number that read "011 +585-636-0010".

28. During the call, "Steven" from "Student Loan Network" attempted to pitch Mr. Sapan the same student loan consolidation services as the previous calls.

29. At some point during the call, the line disconnected.

30. On December 16, 2013 at 10:28 am Defendants called Mr. Sapan's home telephone number using a falsified CID number that read "3038".

31. During the call, "Steven" from "Student Loan Network" made the same pitch and transferred the line to "Lauren Thomas" of "The Student Loan Consolidation Center".

32. Mr. Sapan, now familiar with the nature and identity of the caller, hung up the phone.

33. On December 16, 2013 at 4:45 pm Defendants called Mr. Sapan's home telephone number using a falsified CID number that read "3038".

34. Once again "Lauren Thomas" with "The Student Loan Consolidation Center" attempted to pitch Mr. Sapan student loan consolidation services.

35. Mr. Sapan hung up the phone.

///

///

Complaint

36. Each of the calls Mr. Sapan did not answer used the same CID number as one of the calls he did answer wherein the representative self-identified as being with Defendants.

37. To the extent some other person or company may have been involved in the calls, for example before a mid-call transfer, Plaintiff alleges on information and belief that they were acting as a mere agent for Defendants and were authorized to make the call, had apparent authority to make the call, or that Defendants ratified their conduct after the fact.

38. For all the calls Mr. Sapan did not answer, he pleads on information and belief that they were made by Defendants and/or their agents in order to pitch Defendants' student loan consolidation services to him.

39. The Florida Secretary of State Business Filings webpage lists Defendant M.M.S. as the Manager for Defendant SLCC

40. The Florida Secretary of State Business Filings webpage lists Thomas Breazeale as the President of Defendant M.M.S.

41. Plaintiff has searched public records such as federal employer Identification Number registries and can find no record that Defendant M.M.S. or Defendant SLCC ever employed anyone, nor any evidence that anyone other than Defendant Thomas Breazale ever worked for either of them on a full time basis or in a managerial capacity.

42. Mr. Sapan alleges on information and belief that Defendants M.M.S. and SLCC are very small one man companies in which Defendant Thomas Breazale had full autonomy in day to day operations and management decisions.

43. Defendant Thomas Breazale is, and at all times herein mentioned was, the owner of Defendant M.M.S, which was the managing member of Defendant SLCC.

44. Plaintiff alleges on information and belief that Thomas Breazale made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above.

45. Mr. Sapan has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

### FIRST CAUSE OF ACTION
[TCPA Violation – Do Not Call List – For all thirteen (13) Calls]

46. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

47.  Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

48.  Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

49.  At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

50.  Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line.  These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff.  37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

51. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION
[Trespass to Chattel – For all thirteen (13) calls]

52. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

53. The conduct by defendants complained of herein, namely illegally calling Plaintiff's phone, constitutes an electronic trespass to chattel.

54. At no time did Plaintiff consent to this trespass.

55. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 10% of his monthly phone bills in July of 2013 since Defendants calls constituted 10% or more of the total calls to his phone at the height of their junk calling campaign.

56. In making the illegal calls described above, defendants were guilty of oppression and malice, in that defendants made said calls with the intent to vex,

injure, or annoy Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff therefore seeks an award of punitive damages.

## THIRD CAUSE OF ACTION
[Engaging in Unfair Business Practices – For all thirteen (13) calls]

57. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

58. Because these telephone calls violate federal statutes, they are unlawful business practices within the meaning of section 17200 of the Business and Professions Code.

59. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 10% of his monthly phone bills in July of 2013 since Defendants calls constituted 10% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

60. Section 17203 of the Business and Professions Code entitles Plaintiff to an injunction enjoining defendants from engaging in unfair or unlawful business practices.

/ / /

/ / /

/ / /

/ / /

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c)(2);
2. For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:

3. For compensatory damages according to proof;
4. For punitive damages;

On the THIRD CAUSE OF ACTION:

5. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the Business and Professions Code;

On ALL CAUSES OF ACTION:

6. For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.
7. For costs of suit herein incurred; and
8. For such further relief as the Court deems proper.

DATED: May 20, 2016                                **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
PAUL SAPAN

Complaint